WILLIAM ALLEN, Respondent, v. QUERCUS LUMBER COMPANY, Appellant.

Springfield Court of Appeals, June 17, 1915.

1. MASTER AND SERVANT: Personal Injuries: Orders of Foreman: Substitute Foreman. Action by servant against master for injuries received on account of being struck by certain timbers which he was loading on a railroad car. At the time of the injury the servant was working under orders given by a timber inspector of the purchaser of the timber who had been temporarily left in charge of the work by defendant's foreman. Under the principle of *respondeat superior*, defendant's foreman having acted within the apparent scope of his employment in appointing the substitute foreman, defendant was responsible for any negligent order given by said substitute foreman.

2. ———: Superintendent of Master's Work: Scope of Authority: Implied Authority. The authority to superintend the loading of a car of timber, necessarily requiring considerable time and the use of a number of workmen, impliedly carries with it the power from the master to the foreman to delegate

some one to act in such foreman's stead during such times as he may be called away from such work on other duties.

3. INSTRUCTIONS: Too Abstract and General: Error. An instruction which fails to furnish a proper guide for the jury because it is too abstract and general, is erroneous.

4. ———: Injuries: Negligence: Master and Servant. Action by servant against master for personal injuries received while loading a car with timbers. An instruction was erroneous which permitted the jury merely to find that defendant had not used ordinary care in furnishing a safe place to work without requiring the finding of facts, pleaded or proven, which would make the place negligently unsafe.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard*, Judge.

REVERSED AND REMANDED.

*Sheppard, Green & Sheppard* for appellant.

*Abington & Phillips* for respondent.

FARRINGTON, J.—The petition in this case alleges that the defendant is a corporation operating a sawmill near Poplar Bluff, Missouri, and that on August 13, 1914, plaintiff was a common laborer in its employ. That the defendant in the operation of its plant maintained a platform on which it placed timbers which had been sawed for bridge purposes, from which platform it loaded such timbers onto railroad cars which stood on a switch alongside the platform. That the timbers were finished in the mill and then conveyed by servants of the defendant on a tramway that also ran along the platform, on the opposite side from which the railroad switch stood. That this tramway or tramtrack was seven or eight feet above the platform. That skids or runners were laid on top of the platform and were greased so that the timbers to be loaded into railroad cars could be shoved or skidded over to the side of the platform where such cars stood.

That these runners were situated about seven feet and nine inches apart, and not only ran over the flat platform but also extended at an angle up to the tramtrack which stood some seven feet above the platform. That the timbers that were brought out from the mill to be dumped onto the platform were of various lengths —from twelve to eighteen feet—and were from ten to eighteen inches through, and were of considerable weight. It is alleged that such timbers were dumped over on the inclined skids indiscriminately and that when the platform was filled up they continued dumping the timbers until they lay upon the inclined portion of the skids to the tramway. That there were a number of these skid runners, and that when several of them were filled up, the timbers being of various lengths and sizes would overlap and interlace with timbers which were dumped over on an adjoining set of skids. It is alleged that on August 13, 1914, when said platform and several of the inclined skids were filled with timbers, the plaintiff was set to work taking such timbers from the platform and loading them into the railroad cars; that after taking all from the flat portion of the platform, plaintiff in the discharge of his employment was taking the timbers which remained on the inclined portion of the skids, and that in doing so he loosened a timber which was holding up a number of others on this incline and that as the timbers came down he stepped back into a vacant space between an adjoining pair of skids in order that he might get out of the way of the timbers coming down; and that the timber which he had loosened, in descending caught in that pile on the adjoining skids under which plaintiff was standing and brought it also down on plaintiff thereby crushing his leg and injuring him severely. The amount asked by plaintiff is $7500. The acts of negligence alleged were that the defendant carelessly and negligently built, maintained and used such skids

constructed so closely together that they were insufficient and improper to perform the functions required of them. Further, that the defendant negligently placed such timbers of various lengths indiscriminately on such skids resulting in their interlacing when being taken down and that from such negligent piling of the timbers, the place at which plaintiff was set to work was rendered unsafe. Also, that knowing of the condition above described defendant ordered the plaintiff to loosen said timbers and that as the result of such negligent order he was injured.

The defendant answered by a general denial and by a special plea of contributory negligence charging that plaintiff was careless, negligent and unskillful in pulling or attempting to pull the timbers down and that plaintiff saw and well knew the conditions of the place at which he was set to work and that he was injured by reason of an accident which is ordinarily incidental to such line of employment.

At the close of plaintiff's evidence the defendant offered an instruction in the nature of a demurrer to the evidence which was overruled. The defendant refused to introduce any evidence and the jury under instructions returned a verdict for plaintiff for $4000, and judgment for that amount was rendered from which defendant has appealed to this court.

The court at the request of the plaintiff gave three instructions. The first is on the measure of damages. The second merely defines generally the term "negligence." Neither of these instructions are now complained of. The third instruction is as follows:

"The court instructs the jury that it was the duty of the defendant in this case to use ordinary care to furnish plaintiff with a reasonably safe place in which to work, and if you find and believe from the evidence that its failure so to do, if you find it did fail to do so, caused the injury to plaintiff described in evidence without negligence on his part contributing thereto,

then and in that event your verdict will be for the plaintiff.''

The giving of this instruction is assigned as error.

The court of its own motion gave the following instruction:

''The court instructs the jury that you must disregard entirely all evidence in this case as to direction or orders given or statements made by Dolph Bebee, and that you will not consider any such testimony in making up your verdict.''

While the plaintiff charged three grounds of negligence, the record shows that the one on which plaintiff sought a recovery was that he was negligently ordered to loosen the timber which resulted in his injury. In this respect it is shown that the foreman of the defendant called plaintiff with several colaborers to come and begin loading the car. The timber had been sold to the St. Louis and San Francisco Railroad Company and its timber inspector, one Bebee, was there for the purpose of inspecting the timber as it was placed in the car. Before he would permit them to load it into the car he would inspect each piece and either accept or reject it. Some time after the loading was started and before plaintiff was injured the defendant's foreman went away and was not present at the time the injury occurred. The plaintiff testified that defendant's foreman in charge of this gang of workmen who were loading the timbers, when he left the platform, told the men that he would leave Bebee, the railroad company's inspector, in charge of the loading of the car, and that Bebee ordered the plaintiff to loosen the timber that came down and caused the injury. Over the objection of the defendant the court permitted plaintiff to testify that Bebee was left in charge of the loading of the car and that he ordered and directed plaintiff to loosen the timber. However, as hereinbefore shown, an instruction was given directing the jury to give no consideration whatever to such evidence, thereby elimi-

nating all the testimony with reference to a negligent order as there was nothing else in the record to which such instruction could refer.

For reasons hereinafter stated this judgment must be reversed and the cause remanded and in view of the fact that there may be another trial we deem it necessary to pass upon the correctness of the trial court's instruction eliminating the evidence relative to the order given by Bebee.

All the evidence shows that McCan, the foreman, called the men and set them to work loading this car, he being the foreman and vice-principal of the defendant. For some reason not disclosed he left the work and as before stated told the workmen that Bebee would have charge of the loading. Under this state of facts we believe the defendant is responsible for any negligent order that Bebee gave, on the principle of *respondeat superior*. McCan, the foreman, had authority and was acting within the scope of his employment in ordering and overseeing the car loaded. Plaintiff as a workman was placed there to obey McCan's orders in that particular. We hold that it was within the apparent scope of McCan's employment, and that he had the implied and incidental power as the foreman whose business it was to see that the car was loaded, to designate some one to act as "straw boss" or substitute for him during his temporary absence. It would be unreasonable to suppose that a master would send out a gang of men under a foreman and would require the latter to stop the work and delay its progress during such times as his duties for the master might call him away from the immediate vicinity of the workmen. We are not viewing the question from the standpoint of the authority of an agent to contract, nor are we viewing it from a relation complained of by Bebee as against the defendant, but are viewing it from the common laborer's standpoint who is placed by the master to obey the orders of a foreman—from the standpoint

of one knowing that the foreman has all express and implied authority from the master to see that the car is loaded—and we therefore think plaintiff had a perfect right to rely upon such apparent authority as contemplated the implied right to designate some one who would superintend the work in the temporary absence of the foreman. In complying with Bebee's order plaintiff was obeying the direction of McCan, his foreman and defendant's vice-principal.

Thompson in his Commentaries on the Law of Negligence (2 Ed.), Vol. I, sec. 589, in treating of this subject, used the following language: ''Judicial authority greatly preponderates in favor of the proposition that if a master commits the performance of a certain duty to his servant, and his servant, without the knowledge or consent of the master, devolves the performance of the duty upon some one else, whether upon a person employed by him or upon a volunteer, in whole or in part, and in the performance of it a negligent injury is done by such other person, the master will be liable, irrespective of the consideration whether such other person is, under the circumstances, to be deemed his servant or not. The principle rests upon one of the most extensive duties which men, in a state of civil society, owe to each other. . . .''

In declaring this principle we have not lost sight of the cases of James v. Muehlebach, 34 Mo. App. 512, and Mangan v. Foley, 33 Mo. App. 250, in each of which a driver of a wagon called on a stranger to assist him with his load and the court held that a negligent act of the stranger was not imputed to the master because the servant had no implied power to hire or to give orders to others. Without questioning the correctness of those decisions, it is sufficient to say that the rule as applied there does not apply to our case, because we hold that the authority to superintend the loading of a car of timber which necessarily requires a considerable period of time and the use of a number of work-

men, impliedly carries with it the power from the master to delegate some one to act in his stead during such times as he might be called away from that work on other duties about the plant.

Thompson, in section 4956 (Vol. IV) also lays down the rule as follows: "Assuming that the superintendent has authority to delegate to an ordinary workman the power to discharge the superintendent's duties during his temporary absence, then a workman so appointed will be the superintendent *pro hac vice* and the *alter ego* of the general master, who will be responsible for any injury visited upon another servant through his negligence in performing his duties as superintendent—that is in directing the manner in which the work shall be done" citing the case of Steube v. Iron Co., 85 Mo. App. 640. The following Missouri cases we think also sustain this principle: Dowling v. Allen & Co., 74 Mo. l. c. 18, 19; Hunt v. Desloge Consolidated Lead Co., 104 Mo. App. l. c. 388, 79 S. W. 710; Rigsby v. Oil Well Supply Co., 115 Mo. App. l. c. 312, 313, 91 S. W. 460.

The trial court therefore erred in excluding from the jury the consideration of the testimony relative to the order given by Bebee.

Instruction number 3 which was given is clearly erroneous. As can be seen on reading it, it is too abstract and general and fails to furnish a proper guide for the jury. It permitted the jury to merely find the defendant had not used ordinary care in furnishing a safe place in which to work without requiring the jury to find a single fact pleaded or proven which would make the place negligently unsafe. The following cases condemn such an instruction: Wojtylak v. Coal Co., 188 Mo. 260, 281, 87 S. W. 506; Wilks v. Railroad, 159 Mo. App. 711, 723, 141 S. W. 910; Goode v. Coal Co., 167 Mo. App. 169, 175, 151 S. W. 508; Marques v. Koch & Kost, 176 Mo. App. 143, 161 S. W. 648; Knapp v.

Hanley, 153 Mo. App. 169, 179, 132 S. W. 747; Cody v. Lusk, 187 Mo. App. 327, 171 S. W. 624, 628.

The plaintiff does state a good cause of action, and if on retrial the plaintiff can show that the defendant was negligent in furnishing him an unsafe place in which to work, because of a negligent construction of the skids, or because of a negligent piling of the timbers on the skids, or because of a negligent order, he would be entitled to a recovery for his injuries. As it appears from the record the case was not tried on those charges of negligence, we will leave the question of contributory negligence and the question of the negligence of fellow-servants in piling the timbers to be determined by the trial court on such evidence as is introduced at another trial.

For the error hereinbefore pointed out in the third instruction, the judgment is reversed and the cause remanded. *Sturgis, J.,* concurs. *Robertson, P. J.,* concurs in the result.