JANE WALKER, Administratrix of the Estate of WIL-
SON WALKER, Respondent, v. MISSOURI PA-
CIFIC RAILWAY COMPANY, a Corporation, Ap-
pellant.

Springfield Court of Appeals, July 8, 1922.

1. **MASTER AND SERVANT: Negligence as to Employee Falling from
Work Train, Held for Jury.** In an action under the federal Em-
ployers' Liability Act (U. S. Comp. St., secs. 8657-8665) for the
death of a laborer who, in attempting to go from a flat car into
the caboose of a work train in the dark, struck his head on an
iron bar across the door of the caboose and fell between the cars,
evidence *held* sufficient to take to the jury the question of defend-
ant's negligence in maintaining the bar without a light.

2. **COURTS: In Actions under Federal Employers' Liability Act, the
Courts are Bound by the Law as Construed by Federal Courts.** In
cases arising under the federal Employers' Liability Act (U. S.
Comp. St., secs. 8657-8665) the courts of this State are bound by the
law as construed and held by the federal courts, and not those of
the State courts in cases arising under the State law.

3. **MASTER AND SERVANT: Under Federal Rule, Employee Assumes
Risk of Known Defect.** Under the federal rule, a railroad laborer
attempting to pass from a flat car into the caboose of a work train
in the dark, with knowledge of an iron bar across the door of the
caboose, assumed the risk of injury by contact with the bar, and
cannot base negligence on the bar being maintained without a
light.

4. ————: **Instruction on Negligence in not Providing Safe Entrance
to Caboose, Held Too General.** In an action under the federal
Employers' Liability Act (U. S. Comp. St., sec. 8657-8665) for the
death of a laborer who, in attempting to go from a flat car into
the caboose of a work train, struck his head on an iron bar across
the door of the caboose and fell between the cars, an instruction
which submitted negligence generally in not providing a safe en-
trance to the caboose without particulars as to how it might have
been made unsafe, *held* too general.

of Caboose, Held Erroneous, in Ignoring Necessity for Bar. In an
5. **TRIAL: Instruction on Negligence in Maintaining Rod Across Door**

action under the federal Employers' Liability Act (U. S. Comp. St., 8657-8665) for the death of a laborer who, in attempting to pass from a flat car to the caboose of a work train, struck his head on an iron bar across the door of the caboose, and fell between the rails, an instruction that the defendant was negligent in maintaining the bar was erroneous, as ignoring any necessity for keeping the bar across the door in order to secure the safety of those riding in the caboose.

6. ———: **Instruction on Negligence in not Maintaining Light on Door of Caboose Held Erroneous, as Ignoring Injured Employee's Knowledge.** In action under federal Employers' Liability Act (U. S. Comp. St., sec. 8657-8665) for the death of a laborer who, in attempting to pass from a flat car into the caboose of a work train in the dark, struck his head on an iron bar across the door of the caboose and fell between the cars, an instruction that the failure to maintain a light on the caboose was negligence, was erroneous, as ignoring the fact of decedent's knowledge of the presence of the bar across the door.

7. ———: **Instruction Held Erroneous as Assuming Use of Track in Interstate Commerce.** Where deceased was killed on a work train used in transporting employees to a place where the defendant was constructing new tracks, and the evidence on the question as to whether the tracks had been used for the passage of trains in interstate commerce was conflicting, an instruction that the place where the new tracks were being laid was not used for interstate commerce, was erroneous.

8. **DEATH: Measure of Damages Under Federal Act Stated.** The damages recoverable for death under the federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) are purely compensatory, and in determining the amount of damages recoverable by a mother for the death of a minor unmarried son, it is proper for the jury to consider the relations of the parties and the dependency of the mother for support upon his wages, and in determining the present value of contributions continuing beyond minority, the jury should not be restricted to an interest basis, but should use their sound judgment.

9. ———: **Damages Sufficiently Alleged.** Allegations in a complaint in an action under the federal Employers' Liability Act (U. S. Comp. St., 8657-8665) for the death of plaintiff's minor son, that he was her only support, and that she was damaged by his death, were sufficient to allege damages.

210 M. A.—38

Appeal from Butler County Circuit Court.—*Hon. Almon Ing*, Judge.

REVERSED AND REMANDED.

*James F. Green* and *J. C. Sheppard* for appellant.

(1)   The court erred in permitting the witness Malone to state his conclusion that the rod across the door made it less convenient and more dangerous for persons entering the caboose from the flat car.   Morgan v. Hinge Manufacturing Co., 120 Mo. App. 590, 608-9; Nash v. Dowling & Cavanaugh, 93 Mo. App. 156, 164; Koons v. Railroad, 65 Mo. 592; King v. Railroad, 98 Mo. 235; Miniea v. Cooperage Co., 175 Mo., App. 91, 110.   (2) To maintain a cause of action against his employer for injuries, the servant must have been in the performance of some duty for the master at the time of his injury. Wilson Walker was not so employed at the time of his death.   He was riding on a flat car from his place of work to his home, and undertook to pass from that car into the caboose while the train was in motion.   This was wholly for his own convenience, and had nothing whatever to do with his duty to the master.   Forlouw v. Athletic Mining and Smelting Co., 209 S. W. 117, 120; Stagg v. Edward Westen T. & S. Co., 169 Mo. 489; Barry v. Railroad, 98 Mo. 62, 70; Rigley v. Wabash R. R. Co., 204 S. W. 737; Leak v. Kans. & Tex. Coal Co., 80 Mo. App. 374; Galveston, H. & S. A. Ry. Co. v. Davis, 23 S.W. 1019; Shadoan's Admr. v. Cincinnati N. O. & T. Ry. Co., 82 S. W. 567; Martin v. K. C., M. & B. R. R., 27 So. 646.   (3) It is the duty of the master to use ordinary care to furnish the servant with a reasonably safe place to work, or a reasonably safe way to and from work.   Hayes v. Berry, 184 S. W. 913; Powell v. Walker, 195 Mo. App. 150, 185 S. W. 532.   (4)   Under the doctrine of assumption of risk as adhered to by the federal courts, Walker clearly assumed such risk as a matter of law.   This for two reasons: First because the petition pleads and in-

struction No. 1 requires the jury to find, and the evidence shows that Walker had been in the habit of going through the door of the caboose across which was the iron bar; second, Walker must be presumed to have known the rod was across the door, and the attendant danger, if any, in passing through the door, in view of the fact that the caboose had been in use in the same condition from the time he began work with the extra gang, and the rod across the door was obvious to the most casual observer. So that he is conclusively presumed to have known of its presence, even conceding for the purpose of argument that he had no actual knowledge of the fact. 1 Roberts Federal Liability of Carriers, pp. 986 to 1008, and cases there cited; Seaboard Air Line R. R. Co. v. Horton, 233 U. S. 492, 504; 34 Sup. Ct. Rep. 635, 58 L. Ed. 1062; Patton v. T. & P. R. R. Co., 179 U. S. 658, 21 Sup. Ct. Rep. 275; Butler v. Frazier, 211 U S. 495, 29 Sup. Ct. Rep. 136; Thomas v. Mo. Pac. R. R. Co., 109 Mo. 198.

No brief for respondent.

COX, P. J.—Action for damages under the Federal Employers' Liability for the death of Wilson Walker, a minor. Judgment for plaintiff for $6000 and defendant has appealed.

The defendant operates a railroad running east from Poplar Bluff, Missouri, and is engaged in interstate commerce. In August, 1920, defendant was engaged in building a grade and laying rails thereon to construct two switches about ten miles east of Poplar Bluff, each of which was to connect with its main line at both ends. A number of men who were employed by defendant and engaged in this work lived in Poplar Bluff and were conveyed to their work each morning on a passenger train and returned in the evening on a work train. This work train consisted of an engine, several flat cars and a caboose. This train was used to haul dirt and gravel to the place where the grade was being built.

The dirt was unloaded by pulling a sort of plow along on the flat cars and pushing the dirt off on either side which was then put in proper place by the workmen. The flat cars were connected with each other by an apron that covered up the coupling and permitted the plow to pass over from one car to another without catching. The workment in returning home in the evening rode on these flat cars and in the caboose. The caboose had a door in the side and also a door in each end but had no platform at the ends. There was no apron to cover the coupling between the caboose and flat car next to the caboose, and persons passing from the flat car to the caboose must step across the open space between them which was said by some witnesses to be eighteen inches and by others to be three feet. There was an iron bar across the door of the caboose about four or five feet from the floor. Wilson Walker, the deceased, was eighteen years of age and was working for defendant at the time of his death. On August 10th, the deceased, while returning to Poplar Bluff with other workmen, was riding on the flat car next to the caboose and attempted to pass from the flat car into the caboose through the end door while the train was in motion, and in stepping from the flat car into the end door of the caboose his head struck the iron rod that was across the door and he fell down between the cars and was run over and instantly killed. He had been working for the company about three weeks. There was some testimony tending to show that he knew the iron bar was there across the door and some that he did not know it was there. There was also some testimony that the place where he was working on that day was on the switch that was being built and some that he also worked on the main line on that day. There was some evidence that the switches were so nearly completed at that time that they were used for the passage of interstate trains while other evidence was to the contrary. Other facts will be noticed in the course of the opinion.

The errors assigned relate to the insufficiency of the petition, the admission of testimony, giving and refusing instructions and excessiveness of the verdict.

Some evidence was admitted that was objected to on the ground that it was stating a conclusion. We do not think this reversible error in this case but on a re-trial, witnesses should state facts and let the jury draw the conclusions.

Defendant insists that its demurrer to the evidence should have been sustained. That was properly over-ruled. The evidence tended to show that the deceased was engaged in work which would make the federal statute applicable and the employees were permitted at will to pass from the flat cars to the caboose and *vice versa.* There was some evidence that deceased had not previously passed from the flat cars into the caboose and that his attempt to do so at the time he was killed was his first attempt to so pass. If he had not previously passed through the door, then the physical facts were such, coupled with the evidence of other workmen that they had worked on the same train for a longer time than deceased had worked there without discovering the rod, that the jury could well have believed that the de-ceased did not know of the presence of the bar across the door at the time he attempted to pass through it and that it was so dark at the time that the rod could not be readily seen by him as he approached the door. There was an abundance of evidence to justify a finding that the rod across the door made it unsafe for one passing into the caboose from the flat car. There was also some evidence that when a caboose of that kind was used with a stock train or through freight trains when men other than the trainmen might be riding in the caboose, the bar across the door was necessary to prevent accidents by those men falling out at the door. It might also be necessary in order to prevent workmen on this train who might be riding in the caboose from falling out in case of a stop or sudden jerk of the train. In this con-dition of the testimony, there were two propositions on which to base negligence of defendant. First, in main-taining the bar across the door at all, but if that were not negligent, then whether the defendant should have

had a light there at the time of this accident so a person who did not know of the presence of the bar across the door could see it and avoid being hurt by coming in contact with it. We think the evidence was sufficient to take to the jury the question of defendant's negligence. The evidence was not sufficient to justify the court in declaring as a matter of law that the deceased assumed the risk. He could not be held to have assumed the risk unless he knew of the presence of the bar across the door and that fact is not certainly shown.

Before passing to a consideration of the instructions it may be well to note that in passing upon cases arising under the Federal Employers' Liability Act, we are bound by the law as construed and held by the federal courts and not those of our own state courts in cases arising under the state law. [Seaboard Air Line R. R. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062.]

It is also held in the same case and many others by the United States Supreme Court "that when an employee knows of the defect and appreciates the risk that is attributable to it, then if he continues in the employment without objection or without obtaining from the employer or his representative an assurance that the defect will be remedied he assumes the risk *even though it arises out of the master's breach of duty.*" (The italiacs are ours.) It will thus be seen that under the federal rule, by which we are bound in this case, the assumption of risk depends on whether or not the deceased knew before he attempted to pass from the flat car to the caboose that the bar was across the door. If he knew it was there and with that knowledge he attempted to pass, he assumed the risk and cannot base negligence on the bar being maintained there or the absence of a light.

Plaintiff's Instruction No. 1 is objected to. It is very long and we shall not reproduce it in full here. It contained the following language: "and that defendant did not exercise ordinary care in providing and

maintaining a caboose on such work train for the use of its employees riding thereon with a reasonably safe entrance thereto, that is, if you find said entrance to said caboose was not reasonably safe; or that defendant placed and knowingly permitted to remain an iron bar or rod across the entrance to said caboose about five feet from the floor thereon and that defendant knew that said rod so placed and permitted to remain rendered said entrance dangerous and unsafe for its employees riding on said train, that is, if you find that said rod so placed did render said entrance dangerous and unsafe; or that defendant on the night of August 10, 1920, did not exercise ordinary care in failing to place a light on or about said caboose to light the said entrance thereto, that is, if you find that if no light was so placed and if you find that thereby said entrance was rendered dark, dangerous and unsafe . . ." I will be noticed that this instruction submits to the jury negligence of defendant in three ways. First, generally, by not providing a safe entrance to the caboose without any particulars as to how it might have been made unsafe. This was too general and was error. [Schaaf v. St. Louis Basket & Box Co., 151 Mo. App. 35, 46, 131 S. W. 936; Allen v. Quercus Lumber Co., 190 Mo. App. 399, 406, 177 S. W. 753.]

Negligence in two particulars—maintaining the rod across the door and failure to maintain a light were submitted in this instruction also.

Instruction No. 6 A for defendant restricted negligence to the rod across the door, alone. That, in a sense, placed that instruction in conflict with the one for plaintiff. Plaintiff was entitled to go to the jury on both propositions of maintaining the bar across the door and failure to maintain a light at the door and if her instruction had been correct as to both these propositions, the defendant could not complain because its instruction limited defendant's negligence to only one proposition. In this case, however, plaintiff's instruction as to both these propositions was erroneous.

On maintenance of the bar across the door, the jury were told that if the bar rendered the entrance to the caboose unsafe, the defendant was negligent in maintaining it. The physical facts show that the presence of the bar across the door rendered the entrance from the flat cars into the caboose through the door more hazardous than if it were not there and this instruction was, therefore, equivalent to an instruction that by maintaining the bar there, the defendant was negligent. It ignores entirely any possible necessity for keeping the bar there in order to secure the safety of employees that might be riding in the caboose. That feature should have been incorporated also. If the maintenance of the bar across the door was necessary in order to properly protect thos' riding in the caboose, then the presence of the rod, alone, would not constitute negligence. Defendant might have been negligent in some other respect in not furnishing a reasonably safe entrance to the caboose but negligence cannot be based upon the maintenance of the rod across the door, alone, if its maintenance there was necessary in order to protect those already in the caboose.

This instruction on the light at the door was also erroneous. The instruction as written informed the jury that if a failure to maintain a light at the door rendered the entrance through the door unsafe, then such failure was negligence and would authorize a recovery. This was error. It ignored entirely the question of decedent's knowledge of the presence of the bar across the door and his consequent assumption of the risk. The jury may have found that defendant was not negligent in maintaining the bar across the door or that deceased knew the bar was there and assumed the risk of injury because of its presence, and yet found for plaintiff because the doorway was not lighted. Under the federal rule by which we are bound, if deceased knew of the presence of the bar across the door, he assumed the risk whether the doorway was or was not lighted. The defendant was not required to maintain a light at the door if the employees knew of the presence of the bar across the door.

To constitute negligence in that respect and to prevent the defense of assumption of risk, the jury, should have believed at the time of the accident, it was so dark that the rod could not be readily seen and that deceased did not know the rod was there. The instruction in relation to the failure to maintain a light should have required a finding of those facts in order to find defendant guilty of negligence.

The defendant asked an instruction in relation to the place where the deceased had worked being at the place where the track was not used for interstate purposes which was refused. We have carefully read this instruction and find that it was properly refused because it assumes that the place where deceased worked had not, at the time of the accident, been used for the passage of trains over it from one State to another. The evidence on that question was conflicting and the instruction as asked by defendant was erroneous.

Defendant contends that the verdict is excessive. The deceased was eighteen years of age and was a good worker. He had earned and contributed to his mother about $100 per month for eighteen months prior to his death. The mother had an expectancy of eighteen years and one month. The damages recoverable in a case of this kind is purely compensatory and is limited to the financial loss suffered by reason of the death. [Michigan C. R. Co. v. Vreeland, 227 U. S. 59, 30 Sup. Ct. 192, 57 L. Ed. 417L; G. C. & S. F. Co. v. McGinnis, 228 U. S. 175, 33 Sup. Ct. 426, 57 L. Ed. 785; American Railway Co. v. Didrickson, 227 U. S. 145, 33 Sup. Ct. 224.]

From the same cases, it appears that in determining the amount that may be recovered, no distinction is made in the application of the rule as between cases in which a suit is for the benefit of a wife for the death of her husband, or children for the death of a parent, or the parent for the death of a child. It has been suggested in this case that the deceased was a minor and unmarried, and it cannot be ascertained how long he would remain single or whether he would have continued his contribu-

tions to his mother after reaching his majority. We have been cited to no case by a federal court dealing directly with the question of a deceased minor whose wages would belong to the parent during his minority and whether in that case any recovery could be had based on expected contributions after the minor should reach his majority. The case of Hooper v. Denver & R. G. Ry. Co., 155 Fed. 273, however, seems to us in principle to hold that the minority of the deceased would not preclude anticipated contributions beyond the term of minority. In that case a daughter nineteen years of age, just one year beyond minority was killed. She had never contributed anything to her father but had been in school at his expense. He was a widower and sixty years of age. The daughter was sympathetic, ambitious, industrious, of good health, fond of her father and wanted to keep house for him but had never done so. The court there said "considering this evidence in the light of the natural influence or prompting of filial ties, we think it would have sustained a finding that there was a reasonable expectation of substantial, though not large, pecuniary benefit to the father from a continuance of the life of the daughter." This opinion was written by Judge VANDENTER of the Circuit Court of Appeals who was afterward elevated to the Supreme Bench. From what is there said, it would seem that it is proper for the jury to consider the relation of the parties, whether cordial or otherwise, how closely the filial ties might bind the son to his mother and the dependency of the mother upon the wages received by the son for her support, in determining the probability of the contributions continuing after the son should reach his majority. Should the jury conclude that contributions in any amount would have continued beyond the minority of the deceased if he had lived, then they would not be limited to the value of his services during his minority. Since the case is to be re-tried, the amount of this verdict is not now material. What we have said has been said in view of another trial and we shall add further that if requested, the jury should be instructed to as-

certain the present value of all contributions they shall believe would have been made in the future if deceased had lived. In determining th present value of such contributions, they should not be restricted to an interest basis but should be permitted to use their sound judgment in view of all the evidence in fixing the amount. [Chesapeake & A. R. Co. v. Kelley, 241 U. S. 485; Chesapeake v. Gainey, 241 U. S. 494.]

Objection is made to the petition on the ground that it does not allege any facts showing that plaintiff was damaged by the death of her son. The petition alleges that the son was her only support and that she was damaged by his death. We think this sufficient after verdict, but on a re-trial it should be amended so as to allege the fact of the contributions by deceased and thus bring into force the correct rule for the assessment of damages.

The judgment will be reversed and the cause remanded. *Farrington, J.,* and *Bradley, J.,* concur.