by the Court of Civil Appeals in its opinion (107 S. W. 94), and says:

"Being now of the opinion that there was some evidence to justify the jury in finding that the servants of the company discovered that the plaintiff was about to go into a place where he would be in danger of being struck by the cars, in time to have avoided the injury by means within their power, we deem it a profitless task to discuss the question."

See, also, Verble v. Schaff (Tex. Com. App.) 251 S. W. 1023; St. L. S. W. Ry. Co. v. Ford (Tex. Civ. App.) 237 S. W. 655; Trochta v. M. K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; T. C. Ry. Co. v. Dumas (Tex. Civ. App.) 149 S. W. 547.

We therefore recommend that the answer to the question certified be that the evidence did raise for the jury the issue of discovered peril.

GREENWOOD and PIERSON, JJ. The opinion of the Commission of Appeals answering the certified question is adopted, and ordered certified to the Court of Civil Appeals.

───────────

**ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. JOHNSON. (No. 488–3994.)**

(Commission of Appeals of Texas, Section B. Feb. 18, 1925.)

**1. Master and servant ⬳286(13)—Negligence in barring door of "bobtailed" caboose held for jury.**

Evidence *held* not to show such uniformity among railroads in use of iron bar, securely fastened at both ends, across front door of "bobtailed" caboose, about four feet above floor, as to justify holding, as matter of law, that defendant railroad exercised ordinary care in so barring door.

**2. Master and servant ⬳101, 102(9)—Railroad cannot render some employee's duties more hazardous to protect others.**

Railway company must use ordinary care for safety of all its employees, and cannot take action to protect certain employees which renders more hazardous performance of other employees' duties.

**3. Trial ⬳260(1)—Charge substantially included in charge given properly refused.**

Charge substantially included in special charge given at same party's request is properly refused.

**4. Trial ⬳260(1)—Defendant not entitled to duplicating, confusing, or overlapping charges.**

Defendant is entitled to affirmative charge, defining the very proposition on which defense relies and grouping facts establishing it, but is not entitled to duplicating, confusing, or overlapping charges.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Mrs. Minnie Johnson, as temporary administratrix of the estate of W. E. Johnson, deceased, against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff was affirmed by the Court of Civil Appeals (249 S. W. 1092), and defendant brings error. Judgments affirmed.

E. B. Perkins, of Dallas, and Marsh & McIlwaine and Bryan Marsh, all of Tyler, for plaintiff in error.

Johnson, Edwards & Hughes, of Tyler, for defendant in error.

POWELL, P. J. The material facts in this case are correctly stated by the Court of Civil Appeals, as follows:

"The appellee, Mrs. Minnie Johnson, as temporary administratrix, sued the appellant for damages resulting from the death of her husband, W. E. Johnson. The facts alleged and established upon the trial below show that Johnson was, at the time of his death, employed by the appellant in operating one of its freight trains. The train with which he was connected, and on which he was riding when killed, consisted of an engine, tender, several box cars, two flat cars, and what is known as a "bobtailed caboose." The two flat cars were next to and in front of the caboose. A "bobtailed caboose" is described as being one with a door in the front end and without any platform. Across that door was an iron bar, about four feet from the floor, securely bolted at both ends. This opening was used by the trainmen in going from the caboose toward the front end of the train and in returning. The space between the flat car and the door of the caboose was about three feet. At the time of the accident Johnson was endeavoring to re-enter the caboose by stepping from the flat car. Just as he stooped to pass under the bar he fell between the cars and was run over and killed."

Based upon the pleadings of defendant in error, the important question in the case was whether or not it was negligence to place an iron bar across the doorway as was done in this instance. The case was tried upon special issues, including the one aforesaid, as follows:

"No. 4. Was it negligence upon the part of the defendant, as negligence is hereinbefore defined, to place the iron bar across the door in question?"

At the request of counsel for the railway company, the following special charge was given to the jury:

"You are charged, in connection with question No. 4, that although you may believe from the evidence that it would have been safer for the trainmen in entering the car had there been no bar across the end door, yet if you believe from the evidence that the defendant in

the exercise of ordinary care and caution reached the conclusion and determined that the bar would add to the greater safety of its employees while operating the train, then it will be your duty to answer the question 'No.' "

Question No. 4 was answered in the affirmative by the jury. The court entered judgment against the company and in favor of the widow for $10,000 and her infant son for $7,500. Upon appeal to the Court of Civil Appeals, the judgment of the district court was affirmed. See 249 S. W. 1092. The Supreme Court granted a writ of error on "the importance of the question."

It was conceded by all counsel in the case that, under the regulations of the Interstate Commerce Commission, adopted upon recommendation of the latter's experts under the Safety Appliance Act of Congress, the company had a right to operate a "bobtailed caboose," or one without a platform. It was further conceded that the specifications of the Interstate Commerce Commission for a caboose of this kind did not include the obstruction across the door in question, or any other kind of obstruction. It was admitted by all that this bar across the door was an amendment to the rules of the Interstate Commerce Commission, made by the company of its own accord. The entire question of liability in this case centers around this bar so added by the company.

The application raises no question of assumed risk. It is not contended here that the deceased assumed the risk incident to his employment. We have in this court solely a question of whether or not the company was guilty of negligence in barring the door as it did in this case.

Counsel for the railway company asked a peremptory instruction in favor of their client, upon the theory, as stated in the application herein, to wit:

"The Court of Civil Appeals erred in holding that the trial court did not err (a) in refusing to peremptorily charge the jury to return a verdict for the defendant as requested by petitioner in its special charge No. 1; and (b) in submitting question No. 4 to the jury, for the reason (1) that all the evidence shows and there is no evidence otherwise showing, that the sole and only purpose of petitioner in fastening the iron bar across the end doors of its nonplatform or "bobtailed" cabooses, after they had been constructed in strict keeping with the rules and regulations of the Interstate Commerce Commission, was because petitioner's mechanical experts, whose duty it was to provide the trainmen with cabooses in the operation of its freight trains, believed, and in the exercise of ordinary care, reached the conclusion that such bars, when so fastened across the end doors of the cabooses, would render them safer for the use of its men while being used in the operation of its freight trains; and (2) that the bars did render the cabooses safer for the use of the men while occupying them than they would have been had the end doors not been protected by the bars."

The position of counsel for the company, more briefly, and as stated in oral argument, is that there is no jury question where the proof shows that the negligent act complained of was a practice common to the kind of employment involved. In other words, counsel contend that this barring of the door in this kind of caboose was common among the railroads and that where that is true such evidence conclusively shows that there was no negligence. The contention really made by counsel is in line with the case of Railway Co. v. Alexander, 103 Tex. 594, 132 S. W. 119, where "the witnesses, with one voice, say that the condition described was the one usual upon this and *all other such engines*." (Italics ours.) In the Alexander Case, Judge Williams said there was no question for the jury. In his opinion he stated:

"When the condition, only complained of after the event, thus conclusively appears to have been so treated by employer and employees engaged and skilled in the business, differing in no respect from others following the same business, how can a court or a jury say that there was a failure to use the care which persons of ordinary prudence would devote to that subject?"

The Alexander Case has been followed recently by the Commission of Appeals in the case of Taylor v. White (Tex. Com. App.) 212 S. W. 656, and by the Court of Civil Appeals at Beaumont in the case of Bering Mfg. Co. v. Sedita (Tex. Civ. App.) 216 S. W. 639. Writ of error was refused by the Supreme Court in this last-mentioned case. In each of above cases, the evidence shows that the negligence complained of was uniform among all engaged in similar industries. Therefore it was held, as a matter of law, no negligence was shown.

On the other hand, in the case of French v. S. W. T. & T. Co., 110 Tex. 505, 221 S. W. 570, our Supreme Court, speaking through Justice Greenwood, held the negligence there complained of was a question for the jury. In that case, the negligence alleged was a practice common to all engaged in that kind of business. Another case of this kind is a very able opinion by Justice Harlan of the United States Supreme Court in the case of Wabash R. Co. v. McDaniels, 107 U. S. 454, 2 S. Ct. 932, 27 L. Ed. 605. The court said:

"And to say, as matter of law, that a railroad corporation discharged its obligation to an employee—in respect of the fitness of coemployees whose negligence has caused him to be injured—by exercising, not that degree of care which ought to have been observed, but only such as like corporations are accustomed to observe, would go far towards relieving them of all responsibility whatever for negligence in the selection and retention of incompetent servants. If the general practice of such corporations in the appointment of servants is evidence which a jury may consider in determining whether, in the particular case, the requisite degree of care was observed, such

practice cannot be taken as conclusive upon the inquiry as to the care which ought to have been exercised. A degree of care ordinarily exercised in such matters may not be due, or reasonable, or proper care, and therefore not ordinary care, within the meaning of the law."

[1] When properly interpreted, we do not think there is any conflict whatever between the holding of our Supreme Court in the Alexander and French Cases, supra. But we are not called upon here to determine that question, because the facts in the instant case do not call for a determination of the principle involved in either of those cases. If the record in the case at bar showed that all the railroads using bobtailed cabooses barred the end door substantially as did the company in this case, then we would be called upon to determine whether the facts so in evidence would require the case to fall within the Alexander or the French decision. We might have some difficulty in determining that question if it were really presented. But the record in this case does not show any uniformity among the railroads in the barring of this end door in a caboose of this kind. On the contrary, the record discloses that some of the roads do not bar the end door at all. Railroads of this kind seem to agree with the Interstate Commerce Commission that such a bar should not be prescribed. Furthermore, there is a difference of judgment among the managers of the railroads which do use bars as to just how they should be constructed and where they should be placed on the door. For instance, some of the roads do not have each end of the bar securely fastened. These roads have one end of the bar in a groove which can be raised up, thereby permitting the brakeman to enter or leave the caboose without stooping very much, if any. That presents quite a different situation from a bar four feet above the floor of the caboose which is securely fastened at both ends and which requires an acrobat to enter or leave the caboose in safety. Again, some of the railroads which bar this door felt that it was a safer practice to place two bars on the door. One was placed low near the floor. The other was placed higher, near the top of the door. Still further, some of the roads had different ideas as to the height the one bar should be placed above the floor of the caboose. In other words, the entire situation presented by the record shows that this barring of the door was an experiment, and that there were varying views as to the best method for protecting the workmen where any bar at all was to be used. In some cases, it is shown that instead of using a bar of any kind, a chain was used which hung rather loosely across the door, and could be unfastened and lowered and gotten out of the way.

It is unquestionably true that the railroad in this case was attempting to provide for the better safety of at least some of its employees. But it is equally true that the record shows no uniformity whatever in the use of the bars or in the construction of the bars where they are used. The record shows that a bar of some kind has been used across the doors of these cabooses for many years. If the experts of the Interstate Commerce Commission had determined that a bar of any kind was calculated to promote the safety of the employees, it seems certain they would have amended the specifications for cars of this kind and required a bar across the door. It must be assumed that these experts have seen the various kinds of bars used and that the matter has had their thought and attention. In the case of Railway Company v. Public Service Commission, 250 U. S. 566, 40 S. Ct. 36, 63 L. Ed. 1142, Justice Holmes says:

"The Interstate Commerce Commission is continually on the alert, and if the Pennsylvania law represents a real necessity, no doubt will take or recommend steps to meet the need."

At any rate, in the unquestioned state of this record, there is no such uniformity in the use of this bar, as was made in the case at bar, as would justify the court in holding, as a matter of law, that the company in the instant case exercised ordinary care in barring the door as it did.

The trial court evidently entertained the same view of the facts as we have expressed. The Court of Civil Appeals expressly held that "no such general use was shown as to settle the issue of negligence in the company's favor." This finding is clearly sustained by the record. In view of what we have said as to the facts in the record with reference to the various views as to barring this door, we think the case comes clearly within the rule laid down by Judge Williams in the case of Railway Company v. Foth, 101 Tex. 143, 105 S. W. 322. In that case, the court reversed and remanded the judgment because of the refusal of the following special charge:

"If you find from the evidence that, at the time of plaintiff's injury, there existed among skillful and competent railroad men, charged with the duty of protecting water glasses on engines, a difference of opinion as to the safest mode of protecting such glasses, consistent with their efficient use as such, and that the defendant company, in the exercise of its best judgment, selected the kind of protection that was upon the engine and around the glass at the time of plaintiff's injury, then the defendant would not be liable to the plaintiff even though the jury may conclude from the evidence that the kind of protection selected and used by the defendant was not the kind best calculated to prevent injury to the employees of defendant in case of the bursting of the water glasses, provided it used ordinary care in making the selection."

In discussing this charge, the court went on to say:

"The plaintiff [defendant in error] was struck in the eye by a piece of glass thrown out by the explosion of the water glass of the engine upon which he was employed as fireman. The negligence alleged was that the glass was not properly guarded by a shield to prevent the flying of glass in the event of an explosion, such as the evidence shows frequently happened. The defendant had around its water glass one kind of shield which was extensively used and which was in its normal condition, its only defect, if there was one, being in its original construction. Other kinds of shields had been and were in use and experts differed in their opinions as to which was the best and safest. The very issue to be determined, therefore, was that correctly stated in the special instruction. The charges given by the court were such that the jury might have inferred the rule to be as laid down in that requested and refused, but this is not a sufficient answer to a request thus specifically defining to the jury the very proposition upon which the defense relied and grouping the facts by which it might be established. Missouri, K. & T. Ry. Co. v. Carter, 95 Texas, 484; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 638; St. Louis S. W. Ry. Co. v. Casseday, 92 Texas, 526."

The special charge given by the trial court in the instant case told the jury that, if the company exercised ordinary care in deciding upon the placing of this particular bar across the door, then the company would not be guilty of negligence, even though the jury should further believe that the company had made a mistake in so deciding the matter.

Counsel for all the parties admitted in argument that the only case they could find which involved an accident on a bobtailed caboose was that of Walker v. Missouri Pacific Ry. Co., 210 Mo. App. 592, 243 S. W. 261. There were two appeals in that case. The second opinion can be found in (Mo. App.) 253 S. W. 804. The accident happened in the same way as in the case at bar. The physical facts were the same except that the bar seemed to be five feet from the floor instead of four, as in the case at bar. That was more favorable to the company in the Missouri Case. In the latter case, the deceased was not an employee operating that very train, but one of the employees of the company being transported on that train. One of the main issues in the Missouri Case was assumed risk. But, the court discussed the negligence of the company as follows:

"There was an abundance of evidence to justify a finding that the rod across the door made it unsafe for one passing into the caboose from the flat car. There was also some evidence that, when a caboose of that kind was used with a stock train or through freight trains when men other than the trainmen might be riding in the caboose, the bar across the door was necessary to prevent accidents by

those men falling out at the door. It might also be necessary in order to prevent workmen on this train who might be riding in the caboose from falling out in case of a stop or sudden jerk of the train. In this condition of the testimony, there were two propositions on which to base negligence of defendant: First, in maintaining the bar across the door at all, but, if that were not negligent then whether the defendant should have had a light there at the time of this accident so a person who did not know of the presence of the bar across the door could see it and avoid being hurt by coming in contact with it. We think the evidence was sufficient to take to the jury the question of defendant's negligence."

But, the Court of Appeals in Missouri reversed the judgment for the following reason:

"On maintenance of the bar across the door, the jury were told that, if the bar rendered the entrance to the caboose unsafe, the defendant was negligent in maintaining it. The physical facts show that the presence of the bar across the door rendered the entrance from the flat cars into the caboose through the door more hazardous than if it were not there, and this instruction was therefore equivalent to an instruction that by maintaining the bar there the defendant was negligent. It ignores entirely any possible necessity for keeping the bar there in order to secure the safety of employees that might be riding in the caboose. That feature should have been incorporated also."

Upon another trial below, the Walker Case was again appealed, as stated. Upon the second appeal, the court required a remittitur of $1,400, reducing the judgment to $6,000. As so reduced, the judgment for plaintiff was affirmed. The Supreme Court of Missouri refused a writ of certiorari and the judgment became final. In its final opinion, the Court of Appeals said:

"We are not prepared to say as a matter of law that it was not negligence to maintain the rod across the door while it was being used as it was used at the time Walker was killed, and are of the opinion that this question was properly one for the jury."

We think the Missouri Case was correctly decided. If so, the case at bar was one for the jury also.

[2] The only other assignments in the application relate to the refusal of two special charges. After the trial court refused a peremptory instruction, counsel for the company presented aforesaid defense, in slightly varying language, in several special charges as a jury question. The court gave special charge No. 7 already quoted by us. But counsel say that the trial court erred in not giving the company's special charge, as follows:

"You are charged, in considering your answer to question No. 4, that if you believe from the evidence that the bar across the door of the caboose tended to prevent the employees in

the caboose from being thrown out of the door and injured while in the discharge of their duty, then it will be your duty to answer said question 'No,' if you believe from the evidence that an ordinarily prudent person in the exercise of ordinary care would have, under similar circumstances, equipped the caboose with an iron bar, and this you will do, although you may believe from the evidence that an iron bar across the door rendered ingress into said caboose from a flat car more difficult and dangerous than would have been the case had such bar not been placed across the door."

This special charge was properly refused by the court because it is not the law. It tells the jury that a railway company has the right to take any action which will tend to protect certain employees on a train, even though that very action would render more hazardous the performance of duty by other employees on the train. There is no such law. Counsel cite no authority. It is the duty of a railway company to use ordinary care for the safety of all its employees. If, in the exercise of ordinary care, a way can be found which will protect them all, such a method must be adopted. The jury, in the instant case, from the facts and pleadings, might well have determined that this door could have been fixed in such a way as to protect, not only the favored employees whose duties did not take them through this end door, but also those who found it necessary, in the discharge of their duties, to go through said door frequently in each direction.

The Court of Civil Appeals, in discussing this principle of law, in the case at bar, said:

"The appellee adduced evidence tending to prove that this particular method of obstructing the entrance to the caboose rendered ingress more hazardous. However, the physical facts were such that the jurors might have arrived at that conclusion from a common knowledge of such mechanical conditions. The fact that this bar was placed there to protect those employees who were in the caboose was not, alone, sufficient to justify the appellant in making entrance from the outside more dangerous to others. The jury had a right to conclude that some other method, equally as effective for protecting those within the caboose and less dangerous to others outside, might have been adopted. The conduct of the appellant must be measured by these general rules which determine whether or not it has performed its legal duty to its employees, in providing a safe place in which to work, considering the safety of all those to be affected."

[3] Another assignment contends that the trial court erred in refusing a special charge, as follows:

"You are, in connection with special issue No. 4, as set out in the court's main charge, instructed that if you find from the evidence that at the time W. E. Johnson was injured and killed, skillful and competent railroad men charged with the duty of furnishing reasonably safe caboose cars for the use of train operatives entertained the opinion that, consistent with the efficient use of such cabooses, it added to the safety of the men while using said cabooses in the operation of its freight trains to put iron bars across the end doors of defendant's nonplatform cabooses, and that the defendant company in the exercise of ordinary care determined that the iron bars across the end doors of its nonplatform cabooses would better protect its trainmen from injury in using the cabooses, then it will be your duty to answer said question 'No,' although you may believe from the evidence that the iron bar rendered ingress into the caboose through the end doors more dangerous, and that had said bars not been across the door of the caboose that plaintiff was attempting to enter, he would not have been killed."

This charge was properly refused because substantially included in another special charge tendered by the company and given by the court. In this statement we are in accord with the Court of Civil Appeals.

[4] It is true, as stated by Judge Williams in the Foth Case, supra, that the defendant is entitled to an affirmative presentation "defining to the jury the very proposition upon which the defense relied and grouping the facts by which it might be established." This has been true at least since the old case of Railway Company v. McGlamory, 89 Tex. 638, 35 S. W. 1058.

In the case of Fox v. Dallas Hotel Company, 111 Tex. 461, 240 S. W. 517, Judge Greenwood, speaking for the court, held that the same rule would apply to a case submitted upon special issues. But it is also the settled rule in our state that a litigant is not entitled to "duplicating, confusing, or overlapping charges." Railway Company v. Gorman, 112 Tex. 147, 245 S. W. 418.

In the later case of Railway Company v. Miller, 112 Tex. 356, 247 S. W. 503, 505, the court held it was not error to refuse three special charges all relating to the permanency of injuries affecting closely related portions of the body. The court did say:

"The general issue in this regard was whether plaintiff suffered any permanent effects from his injuries, and if so, to what extent. This was clearly an issue, which if properly requested, the defendant was entitled to have affirmatively submitted to the jury upon its theory of the evidence."

The last two cases merely follow the rule laid down in the Dallas Hotel Company Case, supra, as follows:

"Each group of facts pleaded by defendant in error, which, standing alone, would, if proven, constitute a complete defense to plaintiff in error's suit, presented an issue. It was the statutory right of defendant in error to have the issue presented by each complete plea submitted separately to the jury, just as plaintiff in error had the right to have submitted each issue, entitling her to recover, which she pleaded and proved."

The court, in the latter case, took occasion to say:

"We do not mean to say that all the special charges requested by defendant in error on contributory negligence should have been given."

And, in the instant case, the company was not entitled to have this defense submitted more than once. The trial court accepted the special charge tendered by the company, somewhat general in its nature, but absolutely covering this defense in an affirmative way. We think the Court of Civil Appeals correctly so held.

There are no other assignments. We think the case was fairly tried in the District Court and correctly affirmed by the Court of Civil Appeals.

Therefore, we recommend that the judgments of the District Court and Court of Civil Appeals be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.