## American Barge Line Co. v. Leatherman's Adm'x.

December 16, 1947.

Roscoe Conkling, Judge.

Robert F. Vaughan for appellant.

David R. Castleman and H. Gus Muntzing for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming in part, reversing in part.

The administratrix of John R. Leatherman, deceased, appellee, recovered a judgment of $9,000, that is to say $6,000 for decedent's mother and $3,000 for decedent's father, against American Barge Line Company, appellant, for the pecuniary loss resulting from Leatherman's death. The company appeals.

Appellant now contends that the judgment is erroneous (1) because no negligence was proven and (2) because an instruction as to contributory negligence should have been given and (3) because the verdict was excessive.

Without detailing the pertinent facts and the applicable law relating to appellant's first two contentions, we believe it is now sufficient to say that these first two arguments do not appear to rest on the firm bedrock of sound logicality.

Appellant's third contention as to the excessiveness of the $9,000 verdict for Leatherman's surviving parents presents to us the question of critical import and serious moment in this case. The solution of this question of excessiveness must, we think, depend, fundamentally and to the exclusion of other considerations either upon these parents' financial dependency in the present or upon any reasonable expectation of pecuniary benefits that they might have received from this son in the future.

This action was brought under admiralty law. More specifically, it was brought under a federal law now called the Jones Act, which is Sec. 688, Title 46 U. S. Code, 46 U. S. C. A. sec. 688, adopted by Congress for the benefit of merchant seamen and their dependents. The Jones Act provides that in an action for death damages the personal representative of the deceased seaman shall come within the purview of the United States law pertaining to railway employees or under the Federal Employers' Liability Act, which is Sec. 51, Title 45 U. S. Code, 45 U. S. C. A. sec. 51, adopted by Congress for the benefit of interstate commerce railway employees and their dependents. In other words, the Jones Act appears to have had the practical effect of causing the Federal Employers' Liability Act to embrace merchant seamen employees as well as the railway employees of its original purpose. And the Federal Employers' Liability Act, 45 U. S. C. A. sec. 51 et seq., seems to be a kind of workmen's compensation law covering all railway employees of interstate commerce.

Young Leatherman, age 20 and unmarried, began working as a crew member on one of appellant's river boats on September 9, 1944, and he thus continued until January 5, 1945, when, in the course of his employment, he was accidentally drowned in the Ohio River. It was his first remunerative employment away from home. The net earnings actually paid to Leatherman during this period of slightly less than four months were $282.42 or about $70 monthly. Although Leatherman's parents lived at Moorefield, West Virginia, yet his pay checks were mostly cashed in or about Louisville, thus indicating he himself received the general proceeds of

his own earnings. He was a goodly young fellow in his attitude, appearance and ability. He had helped out with some of the work on some of his father's farms during summer vacations when he was not attending school. The mother, a beneficiary in this verdict to the extent of $6,000, did not testify in this case. The father, a beneficiary in this verdict to the extent of $3,000, testified that he is 63 years old and that his wife, who has no estate, is 54 years old; that there are now three remaining adult children in this family; that the deceased son had, he believed, been sending this mother about $100 monthly during his employment with appellant; that while he had no records to substantiate this belief, yet he based such belief upon his son's plan to make such contributions when he left home; that these monthly remittances were believed to have been made in the form of cash. The father did not say that any contributions had been made unto himself but indicated, as previously stated, that the son had helped him with some of the farm work during school vacations. The father admitted that his own net worth is about $33,000; that he owns the equivalent of 3,500 acres of land and 225 head of cattle in West Virginia; that he, during the period of approximately one year before this trial, earned something like $4,250 through his own land and timber deals. Such were, in general substance, the proven facts pertaining to this question of present dependency or future expectations of benefits.

The Supreme Court of the United States, in the case of Michigan Central R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 195, 57 L. Ed. 417, Ann. Cas. 1914C, 176, involving the Federal Employers' Liability Act and its basic purpose, made this statement: "The obvious purpose of Congress was to save a right of action to certain relatives *dependent* (we make the emphasis) upon an employee wrongfully injured, for the loss and damages resulting to them financially by reason of the wrongful death."

Loss of companionship or society of a son is not an element of recoverable damages. American R. Co. v. Didricksen, 1913, 227 U. S. 145, 33 S. Ct. 224, 57 L. Ed. 456. See, also, St. Louis, etc., R. Co. v. Geer, Tex. Civ. App. 1912, 149 S. W. 1178, affirmed, 1917, 109 Tex. 36, 194 S. W. 939.

Mental anguish suffered by the parents is not an element of damages. McCoullough v. Chicago, R. I. & P. R. Co. 1913, 160 Iowa 524, 142 N. W. 67, 47 L. R. A. N. S., 23.

Where there is neither averment nor evidence of dependency or reasonable expectation of benefits aside from mere relation of parent and child, proof of such relation alone is insufficient to establish pecuniary loss. Boettcher v. Auslender, 1925, 76 Colo. 399, 232 P. 683.

The damages recoverable for death under the Federal Employers' Liability Act are purely compensatory, and in determining the amount of damages recoverable by a mother for the death of a minor unmarried son it is proper for the jury to consider the relations of the parties and the dependency of the mother for support upon his wages, and in determining the present value of contributions continuing beyond minority the jury should not be restricted to an interest basis, but should use their sound judgment. Walker v. Missouri Pac. R. Co., 1922, 210 Mo. App. 592, 243 S. W. 261.

Thus, the law seems to have been established in a case of this character that pecuniary loss or the reasonable expectation of such a loss is the only element of damage that may be considered in awarding a verdict. While loss of companionship, grief, mental distress are all very great and very real elements of human suffering for which no adequate measure of compensation ever exists in cases of this kind, yet the Federal Employers' Liability Act does not facilitate a requital for such evils, since the Act is solely one for dollar replacement, either for a monetary deprivation of the present or for one of reasonable anticipation of the future.

Applying this established law to the proven facts of this case, it now seems incumbent upon us to hold that there was no proof whatever produced on this trial tending to show any present dollar loss to this father as a result of the death of his son. Neither was there any reasonable expectation that such a loss would arise in the ordinary course of future events. This father is 63 years old, is an owner of large land and live stock holdings, is a shrewd trader, is a man with net worth of $33,000, had not been a recipient of any financial

aid from this son. The reasonable probabilities are that he will never, during his life expectancy, be dependent upon any person's property or earnings except those of himself. We think the jury should have been directed not to make any award whatever for any dollar loss to this father. However, this mother is 54 years old and calculated to outlive her husband by several years, is an owner of no estate whatever, is not presumed to have an aptitude for making money, is reasonably expected to be deprived hereafter of her husband's earning power and of part, at least, of his estate at his death, had perhaps been a recipient of some financial aid from this son. Therefore, the reasonable expectation is that this mother would, in the ordinary course of future events, have experienced contributions of financial aid from this son and that such aid, although initiated only in grace's generosity could have developed hereafter into a thing of necessity's compulsion. Admittedly, the evidence was very weak pertaining to contributions made by this son to his mother before his death. However, it seems that the federal law, which is the exclusive subject of our application here, does not require a positive showing of any predeath contributions to justify a recovery of benefits in a case of this kind, provided there has been established *reasonable expectation* of such contributions for the future. Although there was no *reasonable* expectation of future, financial benefits as to this father, yet we do believe, in view of this mother's age and individual situation, there was exactly that expectation as to her. And while we think $6,000 was entirely adequate to meet the uncertain probabilities of this mother's unknown future, yet we do not consider this sum to be too large as to the mother herself in view of the reasonable anticipations that lie ahead.

Wherefore, the judgment is affirmed as to that part of same awarding $6,000 for the benefit of Amber Taylor Leatherman, mother of John R. Leatherman, deceased, but it is reversed as to that part of same awarding $3,000 for the benefit of Albert R. Leatherman, father of the deceased, with directions that such judgment be made to conform herewith.